UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SILFREDO CAMPOS,

                                       Case No. 19-cv-02856 (KPF)

                     Plaintiffs,

     - against -

AEGIS REALTY MANAGEMENT CORP. and
SETH MILLER,

                     Defendants.
-----------------------------------------------------------X

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

RAPAPORT LAW FIRM, PLLC
One Penn Plaza, Suite 2430
New York, New York 10119
Phone: (212) 382-1600
Email: mrapaport@rapaportlaw.com

LeClairRyan PLLC
885 Third Avenue, Sixteenth Floor
New York, New York 10022
Phone: (212) 634-5016
Email: janice.grubin@leclairryan.com

*On the Brief:*
Marc A. Rapaport
Janice B. Grubin

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

LEGAL STANDARD ............................................................................................................... 4

ARGUMENT ............................................................................................................................ 6

    I.    THE AMENDED COMPLAINT SUFFICIENTLY ALLEGES THAT DEFENDANTS
EMPLOYED OR JOINTLY EMPLOYED CAMPOS AND, THEREFORE, THEY ARE
INDEPENDENTLY LIABLE FOR UNPAID OVERTIME WAGES...................................... 6

    II.    CONTRARY TO DEFENDANTS' ARGUMENTS, CAMPOS DOES NOT HAVE THE
BURDEN TO PLEAD THAT HIS CLAIMS AGAINST DEFENDANTS ARE EXEMPT FROM THE
CONFIRMATION ORDER. ................................................................................................ 8

    III.    THE BOILERPLATE THIRD PARTY RELEASE IN THE PLAN, WHICH MAKES NO
MENTION OF FLSA/WAGE CLAIMS AND WAS CONFIRMED WITHOUT PROCEEDINGS
CONCERNING FLSA CLAIMS, DOES NOT ALLOW THE INFERENCE THAT THE
BANKRUPTCY COURT DISCHARGED FLSA CLAIMS SOLELY AGAINST NON-DEBTOR,
JOINT EMPLOYERS. ........................................................................................................ 9

        A.    Defendants provide no Basis to Infer that the Bankruptcy Court Intended to Release Non-
Debtors who are Independently Liable for Wages Based on their Status as Joint Employers............... 9

        B.    The Only Two Known Decisions that Analyze the Applicability of Generic Third Party
Bankruptcy Releases to FLSA Claims Hold that they Do Not Discharge FLSA Claims against Non-
Debtor Joint Employers. ....................................................................................................13

    IV.    IN THE SECOND CIRCUIT, THIRD PARTY RELEASES IN BANKRUPTCY PLANS ARE
ONLY APPROPRIATE IN EXTRAORDINARY CIRCUMSTANCES WHERE THEY ARE
ESSENTIAL TO CARRYING OUT THE DEBTOR'S REORGANIZATION PLAN, AND EVEN
WHERE THEY ARE BROADLY WORDED, THEY HAVE BEEN NARROWLY CONSTRUED.....15

    V.    DEFENDANTS' IMPROPER ATTEMPTS IN THE MOTION TO DISMISS TO DISTRACT
THE COURT WITH DISPARAGING AND FALSE PERSONAL ATTACKS AGAINST CAMPOS. .18

        A.    The Fictitious "ploy to permit the Plaintiff to squat"................................................................18

        B.    The Timing of the Initial Complaint's Filing. ........................................................................19

CONCLUSION ....................................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Actrade Liquidation Trust v. Greenwich Ins. Co. (In re Actrade Fin. Techs. Ltd.)*, 424 B.R. 59, 70-71 (Bankr. S.D.N.Y. 2009) .................................................................. 6, 18

*Aegean Marine Petroleum Network, Inc.* 2019 Bankr. LEXIS 1076 .............................. 17

*Arista Records, LLC v. Doe*, 604 F.3d 110, 110 (2d Cir. 2010) ....................................... 5

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................ 4, 5, 9

*ATSI Comm., Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) ........................... 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ............................................. 4, 5, 9

*Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706 – 07 ............................................ 10

*Calcutti v. SBU, Inc.* 273 F. Supp. 2d  488, 498  (S.D.N.Y. 2003) .................................. 5

*Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir.1984)............................ 7

*Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) ................................ 5

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2nd Cir. 2015). .............. 4, 10, 11

*Clinton Street Food Corp.*, 254 B.R. 523, 535 (Bankr. S.D.N.Y. 2000)........................... 6

*Cordova v. SCCF*, No. 13 Civ. 5665, 2014 WL 3512838, *5 .......................................... 6

*Cruz v. Rose Assoc.*, No. 13 Civ. 0112, 2013 WL 1387018, *1-*2 (S.D.N.Y. Apr. 5, 2013) ................................................................................................................ 6

*Delgado v. Derecktor Shipyards, Inc.* 2012 U.S. Dist. LEXIS 5769 (D. Conn. 2012) ... 11, 12

*Goldsby v. Reynosol Seating, LLC*, 2013 U.S. Dist. LEXIS 56074 (S.D. Ala. March 29, 2013)........................................................................................................ 13, 14, 15

*Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) .............................. 6, 7

*Hernandez v. Larry Miller Roofing, Inc. et ano*, 628 Fed. Appx. *281, 2016 U.S. App. LEXIS **204 (5th Cir. Jan. 6, 2016).......................................................... 13, 14

*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326, 112 S.Ct. 1344, 117 L.E.2d 581 (1992)....................................................................................................... 7

*Nw. Airlines, Inc. v. Bondurant (In re Nw. Airlines Corp.)*, Nos. 05-17930 (ALG), 2008 Bankr. LEXIS 4391 (Bankr. S.D.N.Y. Mar. 5, 2008) ........................................ 12, 13

*NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) ....................................... 5

*Redzepagic v. Hammer*, 2017 U.S. Dist. LEXIS 27984, *9-*10....................................... 10

*Rosenberg v. XO Communs., Inc. (In re  XO Communs., Inc.)*, 330 B.R. 394, 432-433, 436-438............................................................................................... 16, 17

*Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 335 n. 13 (S.D.N.Y. 2010) ............................. 7


**Statutes and Regulations**

11 U.S.C. §108(c) ............................................................................................ 19

29 U.S.C.A. § 203(d) ......................................................................................... 7

F.R.C.P. § 8(a)(1) – (3) ...................................................................................... 8

F.R.C.P. § 8(c)(1).............................................................................................. 8

Fed. R. Civ. P. ("FRCP") 12(b)(6)................................................................. passim

FRCP 8(a)(2)..................................................................................................... 4

## PRELIMINARY STATEMENT

Silfredo Campos ("Campos") asserts overtime claims and related wage claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") against Aegis Realty Management Corp. ("Aegis") and Seth Miller ("Miller") (collectively, "Defendants").

After a conference was held concerning Defendants' pre-motion letter for a motion to dismiss under Fed. R. Civ. P. ("FRCP") 12(b)(6)  (Docket # 9), Campos filed an Amended Complaint (Docket # 12) that sets forth more detailed factual allegations concerning Defendants' status as Campos' joint employers, and narrows Campos' claims to encompass only claims relating to the period from February 2016 (when Campos commenced his employment) through December 21, 2016. On July 3, 2019, Defendants filed their motion to dismiss (Docket # 15) (the "Motion to Dismiss").  Defendants' arguments arise entirely from  a boilerplate, third party release contained in the amended reorganization plan (the "Plan") of non-party 919 Prospect Ave LLC ("919 Prospect" or the "Debtor"), that was confirmed by the Bankruptcy Court on October 3, 2018 (the "2018 Confirmation Order") in 919 Prospect's bankruptcy proceeding (Case No. 16-13569(scc)) ("the Bankruptcy Proceeding").

The Motion to Dismiss does not challenge the sufficiency of the Amended Complaint's overtime allegations.  Defendants also do not dispute that they had the status of Campos' joint employers under the expansive standards of the FLSA and NYLL.[1]  Instead, Defendants contend that, even though they are not debtors in the

---

[1] Indeed, Defendants' submissions to this Court suggest that they do not (indeed, cannot) seriously dispute their joint-employer status.  For example, Defendants

Bankruptcy Proceeding and the Plan makes no mention of either Campos or wage claims, they are covered by the Plan's Release because of its reference to the Debtor's "agents, professionals and employees."   According to Defendants, their motion is premised not merely on the Plan and 2018 Confirmation Order, but on "the Official Docket of the Bankruptcy Court," which contains 214 docket entries and spans more than two and one-half years.  Defs. Mem. at 7.  Defendants claim that their narrative of events described in their brief could be confirmed if the Court were to undertake a canvassing of unspecified "documents on the Official Docket of the Bankruptcy Court which confirmed the Debtor's Plan and the process which led to that event." Defs. Mem. at 7.  Allegedly, "all of the pertinent facts that demonstrate that the Amended Complaint must be dismissed" are buried within the Bankruptcy Proceedings 214 docket entries. Defs. Mem. at 6.

Defendants' request that the Court consider an unspecified number of documents filed with the Bankruptcy Court is not proper on an FRCP 12(b)(6) motion. The Court is not permitted to scrutinize the entire docket of another case to interpret the truth of factual assertions allegedly contained in unspecified documents, let alone try to glean the intended scope of a release that makes no mention of the claims herein.   Simply put, Defendants offer no valid basis for this Court to look outside the Amended Complaint or to give credence to Defendants' narrative of events relating to the Bankruptcy Proceeding.[2]  Notably, the Court has not indicated that the Motion to

themselves aver that Aegis hired and fired Campos. *See* Defendants' Pre-Motion Letter, dated April 23, 2019 (Docket # 9) at 1 and Defendants' Memorandum of Law (Docket # 15) ("Defs. Mem.") at 1.

[2]Defendants do not state that the Bankruptcy Court had any reason to believe that the third party release presented to it in 2018 was intended to encompass wage and hour claims.  As discussed below, other courts faced with similarly broad language have

Dismiss will be converted to one for summary judgment.   For the same reasons, the Court should also reject Defendants' request that the Court consider the alleged, unauthenticated management agreement that Defendants improperly annex to their motion papers.

In any event, Defendants provide no meaningful discussion of the fact-specific factors that courts have considered in interpreting (and, often, limiting) the scope of third party bankruptcy releases, particularly in matters where non-debtors assert that they were released from claims that were neither referred to in a release nor were the subject of any adversary proceedings.   Defendants do not assert that when the Bankruptcy Court confirmed the Plan in 2018, the Bankruptcy Court (or, for that matter, anyone else) contemplated that the release would encompass FLSA claims against non-debtors.   Likewise, Defendants do not (indeed, cannot) argue that wage claims asserted solely against non-debtors, based on their joint employer status, posed any threat to the bankruptcy estate such that the Bankruptcy Court would have concluded that a release of such claims against third parties was warranted.   Certainly, the release itself – which is boilerplate and makes no reference to either wage claims or to Mr. Campos (or, for that matter, to Defendants) – provides no basis to conclude that its intended scope encompassed wage claims solely against non-debtors that would not impair the bankruptcy estate or the debtor's reorganization.

Given the uniquely protective policy considerations underlying the FLSA and NYLL, it is particularly unlikely that the Bankruptcy Court contemplated the release of wage claims against Aegis and Campos.   The Second Circuit requires judicial

---

held that FLSA claims are not encompassed by such broad third party release language, not the least because such claims can only be compromised through the U.S. Department of Labor or with District Court approval after a fairness hearing.

vetting and approval of all FLSA compromises, even in cases where plaintiffs actively oppose the requirement of court approval. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2nd Cir. 2015). As discussed below, Aegis and Miller, having the status of joint employers, are independently liable for Campos' wages, and their liability does not hinge on their connection to 919 Prospect. Tellingly, Defendants do not cite *any* decision in which a court has dismissed an FLSA claim against a non-debtor, joint employer based on a third party release in a confirmed plan. This is not surprising. As discussed below, in the only two known decisions in which courts have assessed whether third party releases contained in confirmed Chapter 11 reorganization plans released non-debtor joint employers from FLSA claims, both courts have answered this question in the negative.

For these reasons, as discussed in further detail below, the Motion to Dismiss should be denied in its entirety.

## LEGAL STANDARD

Pursuant to FRCP 8(a)(2), a complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss under FRCP 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also ATSI Comm., Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) (explaining that a plaintiff must state "the grounds upon which his claim rests

through factual allegations sufficient 'to raise a right to relief above the speculative level'" (quoting *Twombly*, 550 U.S. at 546)).

While *Iqbal* and *Twombly* call for plausible and fact-based allegations, they do not contemplate a "heightened standard that requires a complaint to include specific evidence, factual allegations in addition to those required by Rule 8." *Arista Records, LLC v. Doe*, 604 F.3d 110, 110 (2d Cir. 2010). Moreover, although a complaint must state "enough fact to raise a reasonable expectation that discovery will reveal evidence," a plaintiff need not demonstrate that his allegations are probable. *Twombly*, 550 U.S. at 556.

When deciding a motion to dismiss, a court is obliged to "accept as true all of the factual allegations contained in the complaint," *Twombly*, 550 U.S. at 572, drawing "all inferences in the light most favorable to the non-moving party's favor." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

On a motion to dismiss pursuant to FRCP § 12(b)(6), the Court limits its consideration to (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents that are "integral" to the complaint. *Calcutti v. SBU, Inc.* 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003), citing *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002).

In *Calcutti*, the court held that discovery was required to determine whether or not the release barred the specific third-party claims at issue in that case. *Id.* at 498 – 500. Under New York law, even where a release purports to globally release all

claims and liabilities, it may, based on its context, be interpreted to limit only those claims that were contemplated at the time that the release was executed. *Actrade Liquidation Trust v. Greenwich Ins. Co. (In re Actrade Fin. Techs. Ltd.)*, 424 B.R. 59, 70-71 (Bankr. S.D.N.Y. 2009). It is "a firm principle of New York law that it is less likely that claims are covered by a general release if they are unknown at the time of the release." *Id.* at 71, citing *In re Clinton Street Food Corp.*, 254 B.R. 523, 535 (Bankr. S.D.N.Y. 2000).[3]

## ARGUMENT

### I.   THE AMENDED COMPLAINT SUFFICIENTLY ALLEGES THAT DEFENDANTS EMPLOYED OR JOINTLY EMPLOYED CAMPOS AND, THEREFORE, THEY ARE INDEPENDENTLY LIABLE FOR UNPAID OVERTIME WAGES.

The Amended Complaint meets the plausibility standard pursuant to FRCP 12(b)(6) because it alleges sufficient facts from which this Court can infer that Defendants employed or jointly employed Campos. All that Campos need to do at this stage is "'raise a reasonable expectation that discovery will reveal evidence' that Defendants are [his] employers … within the meaning of FLSA." *Cruz v. Rose Assoc.*, No. 13 Civ. 0112, 2013 WL 1387018, *1-*2 (S.D.N.Y. Apr. 5, 2013); *Cordova v. SCCF*, No. 13 Civ. 5665, 2014 WL 3512838, *5 (S.D.N.Y. Jul. 16, 2014)(Swain, J.)(plaintiffs plausibly pleaded facts suggestive of joint employment; issue premature on motion to dismiss).

To be held liable under the FLSA, a party must be an "employer," which the FLSA defines broadly. *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999); *see also Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326, 112 S.Ct.

---

[3]The Plan provides that except where the Bankruptcy Code applies, it is to be construed in accordance with New York law.

1344, 117 L.E.2d 581 (1992) (noting that, under the FLSA, the definition of "employer" is "strikingly broad," stretch[ing] to cover some parties who might not qualify. . . under . . . traditional . . principles."). An employer is defined under FLSA as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C.A. § 203(d); *see also Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 335 n. 13 (S.D.N.Y. 2010) (definitions of "employer" under NYLL and FLSA are coextensive).

In order to determine if one is an "employer," courts apply the "economic realities" test, under which "the relevant factors include 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 139 (2d Cir.1999) (quoting *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir.1984)).

The Amended Complaint alleges that Miller controls a unified real estate enterprise (the "Aegis Enterprise") that owns and manages at least eight apartment buildings in the New York City area, and that maintenance workers, including Campos, were interchangeably dispatched to work at different buildings at Miller's personal direction. Am. Comp. ¶¶ 23 – 28.

As noted above, Defendants have already explicitly admitted that Aegis hired and fired Campos. The Amended Complaint attaches an email to Campos from Aegis' Director of Property Management, Liana Mongtignier-Marti stating that Miller, alone, determined Campos' rate of pay. Am. Comp., Exh. B.   The Amended Complaint

alleges facts showing that Miller personally controlled the terms of Campos' employment, including, *inter alia*, that he: interviewed Campos and made the decision to hire him as superintendent of 919 Prospect Avenue (Am. Comp. ¶¶ 43 – 46) and, thereafter, hired him a second time to work at other buildings (Am. Comp. ¶¶ 37, 39); directly supervised Campos, which included assigning job duties and inspecting completed work (Am. Comp. ¶¶ 54, 61, 65); terminated Campos after Campos refused to comply with Miller's demands to perform egregiously unlawful construction work in areas that were ridden with lead paint[4] (Am. Comp. ¶ 66); and withheld Campos' final two weeks of pay, ostensibly for installing stoves without permission. (Am. Comp. ¶ 68).

Clearly, the Amended Complaint states valid claims against Defendants, whose liability herein is not derivative of any claims that Campos could have pursued against 919 Prospect.

## II.   CONTRARY TO DEFENDANTS' ARGUMENTS, CAMPOS DOES NOT HAVE THE BURDEN TO PLEAD THAT HIS CLAIMS AGAINST DEFENDANTS ARE EXEMPT FROM THE CONFIRMATION ORDER.

Defendants argue that the Amended Complaint must be dismissed because it "ignores" case law governing bankruptcy releases and "fails to allege any facts that would exempt it from the discharge of the Plaintiff's claims in the confirmed plan." But this is not Plaintiff's burden.   A plaintiff need only plead factual allegations establishing his claims for relief (F.R.C.P. § 8(a)(1) – (3)), and it is incumbent on a defendants to "affirmatively state any avoidance or affirmative defense," including release. F.R.C.P. § 8(c)(1).  Defendants' filing of their pre-motion letter did not shift

---

[4]Later, Miller terminated the employment of Campos' successor for refusing to violate the same law.  Am. Comp. ¶ 41.

this burden from Defendants to Plaintiff or otherwise create stricter pleading requirements than the standards set forth in *Iqbal* and *Twombly*.  Defendants bear the initial burden of establishing that Campos' wage claims against Defendants in their independent capacity as joint employers were discharged, and they have not met this burden.

As discussed in further detail below, particularly in situations involving third party bankruptcy releases (and, even more so, with respect to the applicability of such releases to FLSA claims against non-debtors), courts have engaged in fact-intensive, multi-factor analyses to assess the scope of the release. With their narrative concerning the alleged circumstances surrounding the 2018 Confirmation Order, Defendants appear to concede that the scope of the discharge as to non-debtors hinges on factual issues.   Simply put, Defendants have not met their initial burden of establishing that the 2018 Confirmation Order and release language in the Plan bar Campos' claims.

### III.    THE BOILERPLATE THIRD PARTY RELEASE IN THE PLAN, WHICH MAKES NO MENTION OF FLSA/WAGE CLAIMS AND WAS CONFIRMED WITHOUT PROCEEDINGS CONCERNING FLSA CLAIMS, DOES NOT ALLOW THE INFERENCE THAT THE BANKRUPTCY COURT DISCHARGED FLSA CLAIMS SOLELY AGAINST NON-DEBTOR, JOINT EMPLOYERS.

### A. Defendants provide no Basis to Infer that the Bankruptcy Court Intended to Release Non-Debtors who are Independently Liable for Wages Based on their Status as Joint Employers

Defendants do not address the extreme unlikelihood that the Bankruptcy Court actually intended, or even remotely contemplated, that its 2018 Confirmation Order would bar wage claims against non-debtors who have independent liability based on their employer status. The likelihood that the Bankruptcy Court contemplated the

release of wage claims against non-debtors is particularly remote given the lack of any proceedings involving wage claims, and the bedrock precept that compromises of FLSA claims require judicial scrutiny regarding their fairness and "approval of the district court or the DOL." *Cheeks* at 204- 206; *see, e.g., Redzepagic v. Hammer*, 2017 U.S. Dist. LEXIS 27984, *9-*10 (S.D.N.Y. Feb. 27, 2017) (holding that a general release that an employee signed in a prior state court proceeding that purported to release defendants of "all claims, including specifically those asserted under the FLSA," did not waive FLSA claims because the prior proceeding did not involve FLSA wage claims, and the release had not been scrutinized for fairness).

In *Cheeks*, the Second Circuit, after considering a century of FLSA case law, concluded that any burden or inconvenience that may be occasioned by judicial vetting of FLSA compromises was outweighed by the FLSA's remedial purpose of preventing abuses by unscrupulous employers and remedying "the disparate bargaining power between employers and employees." *Id.* at 206 (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706 – 07). In *Cheeks*, the Second Circuit made clear that judicial scrutiny and approval of FLSA compromises are required to preserve the FLSA's deterrent effect.

Defendants do not assert that there was any mention of FLSA wage claims against non-debtor joint employers in the proceedings that culminated in the 2018 Confirmation Order. Instead, they argue, in essence, that the mere insertion of the boilerplate phrase "agents, professionals and employees" in a plan effectuates a blanket release, as a matter of law, of un-litigated FLSA claims against non-debtors. Defs. Mem. at 7 – 8. This stance would invite employers to run roughshod over the

-10-

FLSA and eviscerate its protections to a degree that is even more extreme than the circumstances presented in *Cheeks*, which involved a privately negotiated settlement agreement in a District Court wage case in which the employee who was represented by counsel). Even if an employee is aware of a bankruptcy filing, it is extremely unlikely that he or she would know that the proceeding could limit claims against non-debtors. He or she may also not be aware of their overtime rights under the FLSA, let alone that these rights were violated. Defendants give no indication of how a bankruptcy court could feasibly know whether (and to what extent) a third party release would prejudice employees.

If Defendants' arguments are accepted, untold numbers of employees could face the prospective release of claims under laws with which they may be unfamiliar, against joint employers whose names were never even revealed to them or to the bankruptcy court. The gutting of FLSA protections based on boilerplate third party releases contained in bankruptcy plans runs counter to the both the FLSA and the Bankruptcy Code, particularly given the prevalence of submitting such release language to bankruptcy courts without identifying the types of claims and names of claimants who might be prejudiced. Unless Defendants' arguments are rejected, non-debtors will be less deterred from violating the FLSA, which is the precise danger that the Second Circuit sought to avoid in *Cheeks.*

Defendants' rely on *Delgado v. Derecktor Shipyards, Inc.* 2012 U.S. Dist. LEXIS 5769 (D. Conn. 2012) for the proposition that bankruptcy releases apply to employment-related claims. But *Delgado* is inapposite because it involved a release of claims that were asserted solely against the debtor, and there was no third party

release.  *Id.* at *5.  Furthermore, *Delgado* involved Title VII claims that, unlike FLSA claims, may be settled without adversary proceedings and judicial vetting and approval.  In *Delgado*, the court was not presented with any of the questions that are raised in this case concerning the scope of the release.

Defendants also rely on *Nw. Airlines, Inc. v. Bondurant (In re Nw. Airlines Corp.)*, Nos. 05-17930 (ALG), 2008 Bankr. LEXIS 4391 (Bankr. S.D.N.Y. Mar. 5, 2008), which involved a claim by the debtors' former employees, airline pilots, that alleged a conspiracy between the airline pilots union and the debtors regarding the allocation of $888 million in funds pursuant to agreements that the Bankruptcy Court had specifically approved and authorized in three court orders during the bankruptcy proceedings.  Id. at *2 - *5.  Unlike here, the pilots' claims in *Nw. Airlines* were: (a) extensively negotiated and litigated during the bankruptcy proceeding; (b) specifically resolved by agreements between the pilots' union and the debtor that the bankruptcy court approved in three orders and provided compensation ($888 million) to plaintiffs; and (c) asserted against the debtor. In addition, In *Nw. Airlines*, the confirmation order specifically discharged claims of "former employees." *Id.* at *3.

Furthermore, in *Nw. Airlines*, the debtor merely requested an injunction against proceeding in a non-bankruptcy forum concerning a specific issue that the bankruptcy court had already dealt with extensively, as opposed to the dismissal that Defendants request here; and this relief was requested by the debtor, as opposed to third parties.  Finally, in *Nw. Airlines*, the court specifically distinguished the circumstances in that case (and the legal standards that the court applied in issuing the injunction), from the stricter standard (*i.e.*, a threat to the reorganization process that

is "imminent, substantial and irreparable") applicable to motions seeking preliminary injunctions in litigation brought against third parties. *Id.* at fn 3 (citations omitted). Here, Defendants do not argue that this litigation, which involves modest sums relative to the sums involved in the Bankruptcy Proceeding, will have any discernable impact on the almost-concluded reorganization process.   Notably, neither *Nw. Airlines* nor any decision cited therein involves wage claims that, like the FLSA claims here, require adversary proceedings and court approval after a fairness hearing, for approval.

> ### B. The Only Two Known Decisions that Analyze the Applicability of Generic Third Party Bankruptcy Releases to FLSA Claims Hold that they Do Not Discharge FLSA Claims against Non-Debtor Joint Employers.

As noted above, Defendants do not cite any case law that addresses the issue of whether a boilerplate, non-specific third party release effectuates a discharge of claims brought against non-party FLSA defendants who are sued on the basis of their independent, joint-employer status.   Plaintiff's counsel is aware of two decisions, both of which recite the broad definition of "employer" under the FLSA and conclude that such third party releases do not impair FLSA claims against joint employers. *See, Hernandez v. Larry Miller Roofing, Inc. et ano*, 628 Fed. Appx. *281, 2016 U.S. App. LEXIS **204 (5th Cir. Jan. 6, 2016) (noting that joint employers are each independently liable for the entire amount of wages due, and holding that the plan's boilerplate release language was not specific enough to waive plaintiff's FLSA claim against non-debtor principal of debtor); *Goldsby v. Reynosol Seating, LLC*, 2013 U.S. Dist. LEXIS 56074 (S.D. Ala. March 29, 2013) (canvassing case law holding that

FLSA claims cannot be released prospectively and contractual waiver would nullify the purposes of the FLSA).

In *Hernandez*, the court noted that although the Fifth Circuit generally allows the release of third party claims in bankruptcy plans, a determination of whether the Plan released plaintiff's FLSA claim against Miller, the debtor's principal, required that the court "examine the specificity of the release provisions."   *Hernandez* at *281, **9.   Notably, in *Hernandez*, the third party release language was as broad and boilerplate as the third party release language in this case.[5]

> In *Hernandez*, the release provided,
>
> The Debtor, Reorganized Debtor, the officers and directors of the Debtor and the shareholders shall be discharged and released from any liability for Claims and Debts, except for obligations arising under this Plan. The exclusive remedy for payment of any Claim or Debt so long as the Plan is not in default shall be the Plan.

*Id.* at *283, **4.   In *Hernandez*, the appellate court held that Hernandez could assert his FLSA claim against the debtor's principal even though Hernandez had voted in favor the plan, and he had already received partial compensation from the debtor for his FLSA claims.  *Id.* at *282, **3.

In *Goldsby,* the court rejected the non-debtor defendants' argument that they were released from liability based on the third party release language of a plan confirmed by the bankruptcy court. *Goldsby* at *21- *22.  Although the circumstances in *Goldsby* differ in certain respects from those here (in *Goldbsy*, the bankruptcy court lifted the stay to allow the prosecution of FLSA claims against the debtor, itself), the legal analysis in *Goldsby* is extremely instructive.   For example, the court

---

[5]Here, the third party release language refers to "agents, professionals and employees."

discusses, at length, the impermissibility of compromising FLSA claims other than by supervision of the Secretary of Labor or scrutiny by the District Court and a finding of fairness.  *Id.* at 19 – 20.

IV.    **IN THE SECOND CIRCUIT, THIRD PARTY RELEASES IN BANKRUPTCY PLANS ARE ONLY APPROPRIATE IN EXTRAORDINARY CIRCUMSTANCES WHERE THEY ARE ESSENTIAL TO CARRYING OUT THE DEBTOR'S REORGANIZATION PLAN, AND EVEN WHERE THEY ARE BROADLY WORDED, THEY HAVE BEEN NARROWLY CONSTRUED.**

Defendants do not (indeed, they cannot) assert that effectuating the reorganization of 919 Prospect required a blanket permanent injunction against assertion of claims against non-debtors for past-due wages.  Indeed, this argument would be utterly lacking in credibility, particularly given the relatively modest amounts at issue in this case.[6]  Assessing the scope of the third-party release of a confirmed plan is a fact-intensive analysis that does not lend itself to determination on a 12(b)(6) motion.  The factual issues that must be considered include, *inter alia*, whether a particular claim was contemplated by the Bankruptcy Court at the time of the confirmation order; the extent (if any) to which each non-debtor contributed to the debtor's reorganization; and whether the non-debtor and debtor had an identity of interest that would result in an impairment of the debtor, such as in situations where the debtor would be legally obligated to indemnify the non-debtor, enjoined claims would be channeled to a settlement fund rather than extinguished or the plan

---

[6]Campos estimates that he is owed: $6,581, plus liquidated damages and interest, for the period February 2016 to May 20, 2016 (Am. Comp. ¶ 53); $5,062.50, plus liquidated damages and interest, for the period May 20, 2016 to July 22, 2016 (Am. Comp. ¶ 62; $12,600, plus liquidated damages and interest, for the period July 23, 2016 to December 21, 2016 (Am. Comp. ¶ 70); compensation for pay stub and wage notice violations; and litigation costs and attorneys' fees, substantial portions of which are attributable to Defendants' litigation strategy.

otherwise provided for full payment of the enjoined claims.  *See, e.g., Rosenberg v. XO Communs., Inc. (In re  XO Communs., Inc.)*, 330 B.R. 394, 432-433, 436-438 (Bankr. S.D.N.Y. Sept. 23, 2005) (citations omitted).  In *XO Communs.*, the bankruptcy court canvasses case law and discusses, at length, why third party releases in bankruptcy plans are proper only in rare circumstances, and the substantial risk that blanket immunity is subject to abuse.  Defendants completely ignore the substantial body of case law in the Second Circuit in which courts have discussed, at length, that third party releases in bankruptcy reorganizations are rare, extraordinary, and narrowly construed.

In *XO Communs.*, the bankruptcy court held that the confirmed plan's third party release did not extend to claims under Section 16(b) of the Securities and Exchange Act of 1934 that were asserted against non-debtor insiders of the debtor.  *Id. at 432-433.*  As here, the defendants sought dismissal of the plaintiffs' claims on the basis of broad release language in the Plan.  *Id.* at 414-415.  Notably, the release language (which the bankruptcy court held did not release plaintiffs' claims) was far less boilerplate than the release language that Defendants rely on in this case.  *Id.* at 414.

In *XO Communs.,* the plaintiff pointed out that (similar to FLSA claims), "many courts have refused to approve a settlement of a Section 16(b) suit for less tha[n] the full amount of the potential of the potential recoverable profit because any lower settlement would negate Section 16(b)'s legislative purpose."  *Id.* at 434.

It is particularly noteworthy that in *XO Communs.*, the court refused to construe the broad release language as applying to Section 16(b) claims because the

release of these claims (like Campos' FLSA claims here) "requires that a court determine whether the proposed settlement or release is fair, adequate, proper and in the best interests of all parties." *Id.* at 432. The court granted plaintiff summary judgment that the plan's release did not release his Section 16(b) claim. *Id.* at 442.

The recent decision in *In re Aegean Marine Petroleum Network, Inc.* 2019 Bankr. LEXIS 1076 (Bankr. S.D.N.Y. April 8, 2019) sets forth a particularly cogent discussion of the pervasiveness of debtors' abusive submission of third-party releases to bankruptcy courts. Among other concerns, the court notes that debtors rarely describe the types of claims that they are asking the court to release, and they "almost never explain why an order extinguishing a particular third-party claim is fair to the party whose claim is being extinguished." Id. at *20. The concerns raised by the court in *In re Aegean* demonstrate the extent to which Defendants are, in effect, advocating an approach to third party bankruptcy releases that would risk the gutting of the wage rights of untold numbers of employees without the slightest attention by any court.

With respect to this case, Miller and Aegis do not offer even the slightest hint that they knew – let alone informed the Bankruptcy Court – that any potential wage claim existed at the time of the Plan's confirmation. In other words, the claims in this case could not possibly have been on the radar of the Bankruptcy Court at the time of the Plan confirmation. And this, in itself, compels the conclusion that the Plan did not extend to FLSA claims. As noted above, the Plan provides that it is to be interpreted under New York law, which provides that even where a release purports to globally release all claims and liabilities, it may, based on its context, be

interpreted to limit only those claims that were contemplated at the time that the release was executed. *Actrade Liquidation Trust v. Greenwich Ins. Co. (In re Actrade Fin. Techs. Ltd.)*, 424 B.R. at 70-71.

V.    **DEFENDANTS' IMPROPER ATTEMPTS IN THE MOTION TO DISMISS TO DISTRACT THE COURT WITH DISPARAGING AND FALSE PERSONAL ATTACKS AGAINST CAMPOS.**

A.  **The Fictitious "ploy to permit the Plaintiff to squat"**

Defendants' Brief, like their earlier pre-motion letter, is replete with gratuitous attacks on Campos that are irrelevant to the sufficiency of the Amended Complaint or any other issue before this Court. These personal attacks are also devoid of merit. While Plaintiff's counsel hesitates to dignify these attempts to distract the Court, we feel compelled to correct the record regarding Defendants' false assertions that this proceeding is "part of a ploy to permit the Plaintiff to squat in the Debtor's building for months without the payment of any use and occupancy" (Defs. Mem. at 10) and that the Amended Complaint is "an attempt to gain leverage to remain in housing for free." Defs. Mem. at 11.

These are unfounded accusations. This is a wage and hour case that was filed with no goal other than to obtain relief for unpaid wages and related wage violations under the FLSA and NYLL. There is no connection between this proceeding and the Housing Court proceedings involving Campos' apartment.

Plaintiff's counsel is informed that there is a separate Housing Court proceeding between 919 Prospect (through its separate landlord/tenant counsel) and Campos (acting *pro se*). To be clear, this wage case was <u>not</u> filed as part of a ploy to delay or influence the Housing Court Proceeding, let alone obtain "housing for free."

-18-

Plaintiff's counsel does not believe that the Housing Court proceeding and this case have any effect on each other.

Notably, Miller personally re-hired Campos in May 2017 to work at Miller's other buildings shortly after Campos' first termination. Complaint ¶ 38. This makes it all the more obvious that Defendants' disparagement of Campos is merely intended to improperly influence the Court.[7]

### B.  The Timing of the Initial Complaint's Filing.

Defendants also assert that

[t]he timing of the filing of the original Complaint, on the 30th day after the Effective Date, demonstrates that the Plaintiff's counsel was painfully aware of the fact that was the last day of the Statute of Limitations pursuant to 11 U.S.C. §108(c).

Defs. Mem. at 4.

The filing of this proceeding was not tied to any alleged statute of limitations or, for that matter, any other alleged deadline in the Bankruptcy Proceeding. In any event, the existence of any such deadline would have had no impact whatsoever, insofar as this case asserts claims that are not impacted by the Plan.

---

[7] Solely to provide context regarding Defendants' calculated and inappropriate effort to sway this Court through their personal attacks against Campos, Plaintiff notes that the approximately three thousand pages of documents in the Bankruptcy Proceeding's docket are replete with graphic characterizations of Miller as an exploitative slumlord whose conduct was aptly described by the Center for Urban Justice as tantamount to a "reign of terror" against the tenants, who successfully joined forces to restore Campos to his superintendent position during the Bankruptcy Proceedings. See, https://therealdeal.com/2019/05/01/tenants-sue-infamous-landlord-for-overseeing-reign-of-terror-at-south-bronx-building/ (accessed on Aug. 2, 2019).

## CONCLUSION

For the reasons stated above, Plaintiff requests that the Court deny Defendants'

motion.

Respectfully submitted,

Dated: New York, New York        By:   /s/ Marc. A Rapaport (via ECF)
       August 2, 2019                          Rapaport Law Firm, PLLC
                                                   One Penn Plaza
                                                   250 West 34th Street, Suite 2430
                                                   New York, NY 10119
                                                   Ph: (212) 382-1600


                                                 /s/ Janice B. Grubin
                                                 LeClairRyan PLLC
                                                 885 Third Ave., Sixteenth Floor
                                                 New York, New York 10022
                                                 Ph: (212) 634-5016