UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SILFREDO CAMPOS,

                                                       Civil Action No.:19-cv-02856 (KPF)

                       Plaintiff,
     v.

AEGIS REALTY MANAGEMENT CORP.
and SETH MILLER,

                      Defendants.
----------------------------------------------------------------X


**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**


Dated: August 16, 2019
      Huntington, New York

                                Rosen & Kantrow, PLLC
                                Attorneys for the Defendants

              BY:   S/Avrum J. Rosen
                        Avrum J. Rosen
                        38 New Street
                        Huntington, New York 11743
                        (631) 423-8527
                        arosen@rkdlawfirm.com

**PRELIMINARY STATEMENT**

The Plaintiff's opposition ("Opposition") to the Motion attempts to obfuscate the applicable legal standards and sets forth arguments that have been resolved against the Plaintiff by Supreme Court precedent.  Simply put, the entire argument is an impermissible collateral attack on a Final Order[1] which confirmed a plan of reorganization ("Plan") that contained third-party releases.  Despite having full knowledge of the Chapter 11 case, the Plaintiff took no such action.  The time to challenge the Plan has passed.

Even if the Plaintiff had timely challenged the third-party releases, he likely would not have been successful. A review of the Plan demonstrates that there were extensive negotiations over the scope of the releases which negotiations took place in the overall context of the fact that the Debtor and its principals, the Defendants in this action, had infused over $2,000,000.00 into the Debtor and committed to pay almost another million dollars pursuant to the Plan.   There was more than sufficient consideration to justify releases pursuant to *Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.),* 416 F.3d 136, 142 (2d Cir. 2005).  However, the critical issue is that the Plaintiff did not challenge the Plan, and the time to do so has long passed.

The Plaintiff next argues that because of the joint and several liability for employers pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*, independent claims against the Defendants are not covered by the third-party releases.  However, the Management Agreement that covers both Defendants in their contractual relationship with the Debtor [Exhibit "A" to the Motion], clearly give them indemnification rights against the Debtor for any recovery by the Plaintiff.  Such rights are at the heart of why plans of reorganization are permitted to have third-party releases and why courts enforce them.

---

[1] Capitalized terms have meanings set forth in the Defendants' Motion to Dismiss or as defined herein.

The Plaintiff also takes the position that bankruptcy plans cannot address FLSA claims because the resolution of such claims requires a "fairness" hearing pursuant to the Second Circuit decision in *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015). However, *Cheeks* only applies to the settlement of FLSA actions that have been commenced in Federal District courts. That case has no applicability to a Court order that bars a claim from being presented because it was not filed in a timely manner. Congress has always been quite explicit in setting forth which claims Bankruptcy Courts can adjudicate and which ones they cannot adjudicate, as well as how those claims are to be paid. If Congress wanted FLSA claims to be either exempt from treatment in plans of reorganization or exempt from discharge it knows how to do it. Plaintiff's policy argument that Armageddon would befall employees if this Court applies the law as it is written should be addressed to Congress, not this Court. Multiple cases from this Circuit have barred untimely FLSA claims in bankruptcy cases.

Plaintiff relies on two cases, one from the Fifth Circuit and one from the Southern District of Alabama to support his claims. A thorough analysis of those cases demonstrates that they do not apply to the facts of this case. Lastly. Plaintiff's continuous *ad hominum* attacks on Mr. Miller are inappropriate.

## ARGUMENT

### I. THIRD-PARTY RELEASES IN CONFIRMED CHAPTER 11 PLAN CANNOT BE COLLATERALLY ATTACKED

The Plaintiff's entire argument is an impermissible collateral attack on a Final Order which confirmed a plan of reorganization that contained third-party releases. In *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 140, 129 S. Ct. 2195, 2198 (2009), the Supreme Court held that the clear and expansive language of a confirmed plan of reorganization prohibited claims against third parties and, could not be collaterally attacked in another proceeding. Plaintiff completely

3

ignores this well-established precedent. This prohibition on collateral attacks extends to the issue as to whether or not the Bankruptcy Court had jurisdiction to issue the injunction or release in the first place. *Id.* at 557 U.S. 147-148, 129 S.Ct. 2203. The Supreme Court has held that preclusion has equal force in preventing a collateral attack on the bankruptcy court's decision confirming its own subject-matter jurisdiction. *Travelers,* citing *Kontrick v. Ryan*, 540 U.S. 443, 445 n.9, 124 S. Ct. 906, 157 L. Ed. 2d 867 (2004) ("Even subject-matter jurisdiction . . . may not be attacked collaterally."); *Chicot Cty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376, 60 S. Ct. 317, 84 L. Ed. 329 (1940). As a result, this Court is without jurisdiction to alter or modify that third-party release contained in the Plan or to question whether or not it should have been included in the first place.

Plaintiff sets forth arguments that the third-party releases of the FLSA claims would not have been permitted if raised before the Bankruptcy Court, without ever citing the relevant law, which is set forth in *Metromedia, supra*. In that case the Second Circuit noted that:

> Courts have approved nondebtor releases when: the estate received substantial consideration, e.g., *Drexel Burnham*, 960 F.2d at 293; the enjoined claims were "channeled" to a settlement fund rather than extinguished, *MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.*), 837 F.2d 89, 93-94 (2d Cir. 1988); *Menard-Sanford v. Mabey (In re A.H. Robins Co.),* 880 F.2d 694, 701 (4th Cir. 1989); the enjoined claims would indirectly impact the debtor's reorganization "by way of indemnity or contribution," id.; and the plan otherwise provided for the full payment of the enjoined claims, *id*. Nondebtor releases may also be tolerated if the affected creditors consent. *See In re Specialty Equip. Cos.,* 3 F.3d 1043, 1047 (7th Cir. 1993).

As set forth above, the third-party releases in the Plan do meet the test set forth in that case as the parties receiving the third-party releases funded the Plan and all have indemnification rights against the Debtor. Those parties also agree to pay all allowed claims in full. The fact that this claim is alleged to be a "small claim", so the third-party releases should not apply is without any legal basis whatsoever. The Plan was confirmed and the agreement was made to fund on the

basis of the known and allowed claims that existed as of confirmation of the Plan. If there were a hundred unknown "small claims" it would no longer be a "small" amount of money.

This argument by the Plaintiff as to the size of the claim highlights the inherent contradiction of his position on the effect of the Plan and its impact on this action. In the first Complaint, the Plaintiff sued the Defendants for alleged multiple infractions that occurred during the pendency of the Chapter 11 case while the Operating Trustee was the sole employer of the Plaintiff.[2] When confronted with these facts at the pre-motion conference, all of those claims, which are the only claims that existed within the FLSA statute of limitations, unless there is a finding of "willfulness", were abandoned. If the Plaintiff is correct that the Plan injunction and the third-party releases are improper and that FLSA claims cannot be adjudicated without a *Cheeks* hearing, then all of the claims against the Operating Trustee would also survive. The Plaintiff obviously knows that those claims are barred under the Plan and the failure to file either pre-petition or post-petition claims in a timely manner released those claims without a *Cheeks* hearing.

This brings us to the Plaintiff's position that Bankruptcy plans cannot address FLSA claims because the resolution of such claims requires a "fairness" hearing pursuant to the Second Circuit decision in *Cheeks, supra,* wherein the Court addresses whether or not the *settlement* of FLSA actions without review by either the Department of Labor or the District Court are enforceable. *Gaughan v. Rubenstein,* 261 F. Supp. 3d 390 (S.D.N.Y. 2017)("By its terms, *Cheeks* thus applies only to settlement agreements that occur within the context of Rule 41. And Rule 41, in turn, does not apply to settlement agreements entered into entirely outside the litigation context, like the Agreement at issue here. Rule 41 applies instead to dismissals, which,

---

[2] It should not be lost on the Court that Exhibit " C " to the Amended Complaint shows that the Plaintiff was soliciting and performing work for others when he was supposed to be at the building where he was employed by the Operating Trustee.

*a fortiori*, cannot occur unless and until an action is commenced in court. Fed. R. Civ. P. 41"). Moreover, the third-party release is not an adjudication of that claim, it is in the nature of a permanent injunction as well as a bar date order. FLSA claims can and have been dismissed for failure to timely file claims in chapter 11 cases. *Arjumand v. Laguardia Assocs., L.P*., No. 14-CV-4618 (WFK) (RLM), 2015 U.S. Dist. LEXIS 40444 (E.D.N.Y. Mar. 30, 2015) (FLSA claims dismissed with prejudice when claims not timely filed in Chapter 11 cases).

Congress has always been quite explicit in setting forth which claims Bankruptcy Courts can adjudicate and which ones they cannot adjudicate as well as how those claims are to be paid. Sections 362 (b), 507, 523, 524 and 541 of Title 11 of the United States Code are only a few of such examples. If Congress wanted FLSA claims to be either exempt from treatment in plans of reorganization or exempt from discharge, it knows how to do it. FLSA claims have not been afforded any special treatment anywhere in the Bankruptcy Code and are included in the expansive definition of a "Claim" under 11 U.S.C. §101(5).

## II. *HERNANDEZ* AND *GOLDSBY* ARE DISTINGUISHABLE BECAUSE THEY INVOLVED PENDING FLSA ACTIONS

Plaintiff relies on two cases, one from the Fifth Circuit and one from the Southern District of Alabama to support his position. A thorough analysis of those cases demonstrates that they do not apply to the facts of this case. The two cases are *Hernandez v. Larry Miller Roofing, Inc*., 628 F. App'x 281 (5th Cir. 2016) and *Goldsby v. Renosol Seating, LLC,* No. 2:08-00148-KD-N, 2013 U.S. Dist. LEXIS 56074 (S.D. Ala. Mar. 28, 2013). A review of *Goldsby* actually supports the Defendants' position and demonstrates what could have happened in this case if the Plaintiff had done what was needed to preserve his rights. In that case, FLSA cases against the Debtor and individual employees and officers were consolidated for discovery and trial in District Court in the Northern District of Alabama. There were third-party releases in the

confirmed plan of the debtor.  However, the case against the Debtor had been pending at the time of the filing.  The critical difference in that case was the fact that the debtor and the plaintiffs *consented* to the adjudication of the claim in Alabama and entered into a consent order in the bankruptcy case lifting the automatic stay.  That court stated:

> In response (doc. 142) to the defendants' motion to reconsider, plaintiffs have filed a "Stipulation and Agreed Order Granting Relief From Stay" which was entered by the same Bankruptcy Court that confirmed the Plan relied upon by the defendants for the premise that plaintiffs' FLSA claims have been "discharged, released, and enjoined." (Doc. 142-1). In this Order, the Bankruptcy Court not only refers to the consolidated actions which defendants  [*21] seek to have this Court dismiss but declares that, under the Plan, "Plaintiffs [FLSA] claims are unimpaired, though subject to dispute by the Debtors, including Renosol . . .[and] Plaintiffs and Debtors agree that the District Court is the proper venue to resolve whether the Plaintiffs' claims have merit." (Doc. 142-1 at 3-4). The Bankruptcy Court retained jurisdiction to handle issues "regarding the payment of the Plaintiffs' claims upon a final determination by the District Court, whether by judgment or confirmation of a settlement." (Doc. 142-1 at 5).

*Id.* at *20-21.

The *Goldsby* court then held that the third parties covered by the release could not have greater rights than the debtor and the Bankruptcy Court in the Southern District of New York had sent the matter to it for adjudication.  But the court did not end its analysis there.  It went on to determine if the releases were still enforceable under the *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1007-08 (4th Cir. 1986)(Finding that liability of non-debtor defendants to whom debtor owed indemnity "would reduce and diminish the insurance fund or pool . . . and thereby affect the property of the debtor to the detriment of the debtor's creditors as a whole.").  The Court determined that the Defendants had not (unlike the case at bar) provided any proof of any indemnification agreement, and so permitted the case to proceed against them on the joint and severable liability theory.  While it is questionable if that court had the right to make that determination if it was in the Second Circuit, it is clear that even if it did, the inference and logic

of the decision demonstrates that where there are indemnification rights against the Debtor, the third-party releases are valid and enforceable. It also demonstrates the mechanism that the Plaintiff should have used to preserve his rights. Had he filed a claim, all of these issues would have been addressed as part of the Plan negotiation process.

The main case upon which the Plaintiff relies is *Hernandez*. In that case, the Fifth Circuit applied a very different analysis from the criteria in this Circuit. At the outset, unlike this Circuit, the Fifth Circuit does not allow non-consensual third-party releases in Chapter 11 plans. *Cole v. Nabors Corp. Servs., Inc. (In re CJ Holding Co.),* No. H-18-3250, 2019 U.S. Dist. LEXIS 21199, (S.D. Tex. Feb. 8, 2019)("The Fifth Circuit has concluded that a bankruptcy court may not confirm a plan that provides "non-consensual non-debtor releases." *In re Vitro S.A.B. de CV,* 701 F.3d at 1061-62 (citing *In re Pac. Lumber Co*., 584 F.3d 229, 251 (5th Cir. 2012)). The Fifth Circuit does not preclude bankruptcy courts from approving a "consensual non-debtor release.") In addition, unlike the case at bar, the FLSA action in that case was pending at the time the case was filed. That plaintiff filed a claim and received a distribution. The court ruled that the general third-party release contained in that plan was not specific enough in that it did not specifically mention the third party by name and did not address FLSA actions.

However, as noted, it was a known claim. In this case, the Plaintiff, fully cognizant of the existence of the case, lay in wait until after the Effective Date of the confirmed Plan to file his action. While it is not unreasonable to expect plans to be specific in adequately addressing known claims, clairvoyance should not be required of the drafters of a plan. It is incumbent on creditors with knowledge of the case to come forward. The entire reason for enforcing these releases is to permit the expeditious resolutions of the issues in Chapter 11 cases and bring

finality to these matters. Allowing collateral attacks on confirmed plans destroys the entire rationale for the Chapter 11 process.

The Fifth Circuit also engaged in the analysis of why certain third-party releases had been upheld before based upon substantial contribution by the released party. However, it then went on to hold that the joint and several nature of FLSA claims and determined, without any real discussion, that the third-party release did not apply. That court did not discuss at all, whether or not there were indemnification rights that could be asserted against the debtor in that case. As discussed above, that issue is central to the enforcement of third-party releases in this Circuit.

At least one District Court in the Fifth Circuit has upheld dismissal of a collateral attack based upon similar language to the case at bar in the context of a sexual harassment case since the decision in *Hernandez.* In *Cole v. Nabors Corp. Servs., Inc., supra,* the District Court affirmed a bankruptcy court decision that barred an action against a third-party affiliate. In a thorough and well-reasoned decision that court analyzed all of the issue preclusion issues on such a collateral attack as well as the importance of the reasons behind third-party releases. In addition to the indemnification issues, that court noted that allowing the action to proceed would require the debtor to be involved in the discovery process which would force it to incur additional costs. *Id.* at *27. Thus, the two cases that the Plaintiff relies upon are not applicable to this case and pursuant to the case law set forth in the Motion as well as the cases discussed above, the Motion to dismiss should be granted.

## CONCLUSION

It is respectfully requested that the Amended Complaint be dismissed with prejudice, together with such other and further relief as to this Court seems just and proper.

Dated:  August 16, 2019
       Huntington, New York

                        Rosen & Kantrow, PLLC
                        Attorneys for the Defendants

BY:   S/Avrum J. Rosen
        Avrum J. Rosen
        38 New Street
        Huntington, New York 11743
        (631) 423-8527
        arosen@rkdlawfirm.com