UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SILFREDO CAMPOS,

                              Plaintiff,

              -v.-

AEGIS REALTY MANAGEMENT CORP.
and SETH MILLER,

                              Defendants.

19 Civ. 2856 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Silfredo Campos was employed as the superintendent of a Bronx

building (the "Building") from February 2016 to December 2016. The Building

was owned by non-party 919 Prospect Avenue LLC ("919 LLC") and was

managed by Defendant Aegis Realty Management Corp. ("Aegis"), an

organization operated by Defendant Seth Miller (together with Aegis,

"Defendants"). In December 2016, after Plaintiff had served as superintendent

for ten months, 919 LLC filed for bankruptcy. As part of that bankruptcy

proceeding, the Bankruptcy Court adopted an order releasing 919 LLC, as well

as its "agents, professionals and employees," from all claims against them that

existed as of October 3, 2018.

In 2019, Plaintiff filed this suit, claiming that Defendants had served as

his employers while he was acting as superintendent of the Building, and in

that capacity had violated multiple provisions of the Fair Labor Standards Act,

*as amended*, 29 U.S.C. §§ 201-219 (the "FLSA"), and the New York Labor Law,

Consol. Laws 1909, ch. 31 (the "NYLL"). Defendants now move to dismiss the

suit in its entirety. Defendants do not challenge the pleadings as being insufficient to state a claim for relief under the relevant statutes. Instead, Defendants argue that Plaintiff's suit is barred by the Bankruptcy Court's order releasing third parties from liability. At this stage in the proceedings, the Court cannot conclude as a matter of law that Plaintiff's suit is precluded. For this reason, Defendants' motion is denied.

**BACKGROUND**[1]

## A.    Factual Background

Seth Miller is the sole member of 919 LLC, which Defendants created in 2011 to hold the title to the Building. (Am. Compl. ¶¶ 17, 32). Miller is also the principal of Aegis, an entity that serves as a managing agent for multiple apartment buildings in New York, including the Building. (*Id.* at ¶¶ 16, 25).

---

[1]    This Opinion draws its facts primarily from the operative pleading, the Amended Complaint ("Am. Compl." (Dkt. #12)), the well-pleaded facts of which are taken as true for purposes of this motion. *See Morrison* v. *Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 679 (2009). The Court also considers matters of public record, such as the filings in 919 LLC's bankruptcy proceeding, which are referred to in this Opinion by their docket entry number and the prefix "Bankr. Dkt." *See Kramer* v. *Time Warner Inc.*, 937 F.2d 767, 773-75 (2d Cir. 1991) (holding that the Court may consider matters of which judicial notice may be taken under Fed. R. Evid. 201); *see also Blue Tree Hotels Inv. (Canada), Ltd.* v. *Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (holding that a Court may consider public records, such as complaints filed in state court, in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6)). As discussed below, the Court takes judicial notice of these public records "in order to determine what statements [the public records] contained ... not for the truth of the matters asserted." *Roth* v. *Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (internal quotation marks and emphases omitted) (quoting *Kramer*, 937 F.3d at 774).

The Court refers to the parties' briefing as follows: Defendants' Memorandum of Law in Support of Their Motion to Dismiss as "Def. Br." (Dkt. #15); Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss as "Pl. Opp." (Dkt. #18); and Defendants' Memorandum of Law in Further Support of Their Motion to Dismiss as "Def. Reply" (Dkt. #19).

In February 2016, Miller hired Silfredo Campos to work as the superintendent of the "severely neglected" Building. (Am. Compl. ¶ 10).[2] While Plaintiff served as superintendent, Miller exercised personal and direct control over the "hiring, firing, supervision, and wages" of all of Aegis' maintenance workers, including Plaintiff. (*Id.* at ¶ 35). Plaintiff was responsible for performing maintenance and upkeep at the Building and was to be on call for Building-related emergencies. (*Id.* at ¶¶ 42, 59). In addition, Plaintiff was tasked with completing renovation projects at the Building, such as renovating apartments, replacing floors, and painting walls. (*Id.* at ¶ 64). Miller met with Plaintiff on a weekly basis to provide him with instructions regarding additional tasks he was to complete. (*Id.* at ¶¶ 10, 19). In order to complete these projects, Plaintiff frequently worked twelve-hour days from Monday through Friday, and seven-hour days on Saturday. (*Id.* at ¶¶ 50, 57, 58). Regardless of how many hours per week Plaintiff worked, he was compensated at a flat rate of $500 per week. (*Id.* at ¶ 60).

On December 22, 2016, Plaintiff was terminated by Miller. (Am. Compl. ¶ 12). Plaintiff alleges that he is owed thousands of dollars in unpaid regular and overtime pay for this period. (*Id.* at ¶¶ 53, 62, 67, 69, 70). Plaintiff also

---

[2]  The Amended Complaint alleges that Miller hired Plaintiff and "exercised sufficient operational control over Aegis's operations to be considered Campos' employer." (Am. Compl. ¶ 18). The Amended Complaint goes on to allege that both Defendants, Miller and Aegis, hired Plaintiff and acted as his employer. (*Id.* at ¶¶ 20, 42). But it does not explicitly allege that Miller was acting as Aegis's principal when he hired Campos, or that Miller hired Plaintiff to work for Aegis. Nevertheless, Defendants do not challenge Plaintiff's claim that Miller and Aegis both acted as Plaintiff's employer for purposes of the FLSA and the NYLL, and the Court accordingly does not address that potential defense here.

alleges that Defendants never provided him with an accurate statement of his wages or notice of his rate of pay. (*Id.* at ¶¶ 72, 73). Further, Plaintiff argues that Defendants required him to provide and pay for the tools that were required to perform the job he had been hired to do. (*Id.* at ¶ 94).

## B.    The 919 LLC Bankruptcy Proceeding

Concurrently with Plaintiff's termination, 919 LLC filed a bankruptcy petition in the United States Bankruptcy Court for the Southern District of New York on December 22, 2016. *In re 919 Prospect Ave. LLC*, No. 16-13569 (SCC) (Bankr. S.D.N.Y.). (Bankr. Dkt. #1). On August 2, 2018, 919 LLC proposed a Plan of Reorganization in the bankruptcy proceeding. (Bankr. Dkt. #142 (the "Plan")). In relevant part, the Plan provided that:

> All payments, distributions and transfers of cash or property under the Plan are in full and final satisfaction, settlement and release of all claims against the Operating Trustee, [919 LLC], their agents, professionals and employees of any nature whatsoever existing at the Confirmation Date unless otherwise stated in this Plan…. All Persons and Entities (other than Tenants with Claims in Class 5) shall be precluded from asserting against [919 LLC], the Debtor in Possession, their successors or assigns, including, without limitation, the Operating Trustee, in his fiduciary and/or individual capacity, the Chapter 11 Administrative Claimants as defined in the Note, [919 LLC], their agents and employees, assigns, or their respective assets, properties or interests in property, any other or further Claims.

(Plan § 6.5).[3]

---

[3]    In the remainder of this Opinion, that portion of the cited provision that released all claims against 919 LLC's agents, professionals, and employees that existed as of the Confirmation Date of October 3, 2018, shall be referred to as the "Third-Party Release."

The Plan defined "Confirmation Date" as the date upon which the Bankruptcy Court would enter an order confirming the Plan. (Plan § 1.17). It defined "Claims" to include the:

> right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

(*Id.* § 1.13 (citing 11 U.S.C. § 101(5))). "Entities," in turn, was defined to include persons, estates, trusts, governmental units, and United States trustees. (*Id.* § 1.27 (citing 11 U.S.C. § 101(15))). The Plan was confirmed by the Bankruptcy Court on October 3, 2018. (Bankr. Dkt. #158).

## C. Procedural Background

Plaintiff filed his Complaint on March 29, 2019. (Dkt. #1). On April 23, 2019, Defendants filed a letter motion seeking leave to file a motion to dismiss the Complaint in its entirety, or to transfer the matter to the Bankruptcy Court. (Dkt. #9). The Court held a pre-motion conference concerning Defendants' contemplated motion on May 7, 2019, during which it granted Plaintiff leave to file an amended complaint. (Minute Entry for May 7, 2019). Plaintiff filed his Amended Complaint on May 21, 2019. (Dkt. #12). The Court then granted Defendants leave to file their motion to dismiss. (Dkt. #14). Defendants filed their motion to dismiss and supporting papers on July 3, 2019. (Dkt. #15). Plaintiff filed an opposition brief on August 2, 2019. (Dkt.

#18).  This motion became fully briefed when Defendants filed their reply brief on August 16, 2019.  (Dkt. #19).

## DISCUSSION

### A.    Applicable Law

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in Plaintiff's favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted)).  A plaintiff is entitled to relief if he alleges "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible." (internal quotation marks and alterations omitted)).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.

Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In resolving a Rule 12(b)(6) motion, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (collecting cases). A court may also consider "matters as to which judicial notice may be taken, such as pleadings in other lawsuits and other public records[.]" *Rosado-Acha* v. *Red Bull Gmbh*, No. 15 Civ. 7620 (KPF), 2016 WL 3636672, at *6 (S.D.N.Y. June 29, 2016) (quoting *Agron* v. *Douglas W. Dunham, Esq. & Assocs.*, No. 02 Civ. 10071 (LAP), 2004 WL 691682, at *2 (S.D.N.Y. Mar. 31, 2004)) (internal quotation marks omitted); *see also Pani* v. *Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)."); *see generally Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 558-59 (2d Cir. 2016) (discussing documents that may properly be considered in resolving a Rule 12(b)(6) motion). More specifically, "[i]n the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*." *Jianjun Lou* v. *Trutex, Inc.*, 872 F. Supp. 2d 344, 350 n.6 (S.D.N.Y. 2012); *see also Rothman* v. *Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of pleading in another lawsuit). The Court may take judicial notice of a document filed in another court to establish the

fact of such litigation and related filings, but not for the truth of the matters asserted in the other litigation. *Glob. Network Commc'ns, Inc.* v. *City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006) (internal quotation marks and citation omitted).

In resolving Defendants' Rule 12(b)(6) motion to dismiss — which presents a defense grounded upon the Third-Party Release — the Court takes judicial notice of the filings in the Bankruptcy Court proceeding to which the parties have specifically referred. *TechnoMarine SA* v. *Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014) ("A court may consider a *res judicata* defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice."). Specifically, the Court takes judicial notice of the Amended Disclosure Statement, the Plan, the Bankruptcy Court's adoption of the Plan, the Administrative Bar Date Order, and the affidavit of service for the Administrative Bar Date Order. (Bankr. Dkt. #141, 142, 158, 187, 189).

## B.   Analysis

Defendants argue that Plaintiff's FLSA and NYLL claims must be dismissed because the Third-Party Release bars Plaintiff from bringing them.[4] This argument, which is premised upon the enforceability of the Bankruptcy

---

[4]   The Third-Party Release applies to 919 LLC and its agents, professionals, and employees. (Bankr. Dkt. #142, 158).   Plaintiff does not challenge Defendants' contention that the Release would apply to them because they are 919 LLC's agents.   To the contrary, Plaintiff alleges that Defendants and 919 LLC acted in concert, along with various other entities, as a single enterprise. (*See generally* Am. Compl.).   In so doing, Plaintiff *a fortiori* accepts the proposition that the Third-Party Release might apply to some claims brought against Defendants.

Court's order confirming the Plan, sounds in *res judicata*.  Under New York

law,

> the doctrine of *res judicata*, or claim preclusion,
> provides that a final judgment on the merits of an action
> precludes the parties from relitigating issues that were
> or could have been raised in that action.... If a valid and
> final judgment has been entered on the merits of a case,
> the claim extinguished includes all rights of the plaintiff
> to remedies against the defendant with respect to all or
> any part of the transaction, or series of connected
> transactions, out of which the action arose.

*Duane Reade, Inc.* v. *St. Paul Fire & Marine Ins. Co.,* 600 F.3d 190, 195-96 (2d

Cir. 2010) (citations, quotation marks, and alterations omitted).[5]

Plaintiff claims that the Third-Party Release should have no impact on

the viability of his claims at this stage in the proceedings because: (i) he has

presented plausible allegations that Defendants violated the FLSA and the

NYLL; (ii) the Third-Party Release was not lawful and could not bar FLSA

claims without a fairness review; and (ii) the terms of the Third-Party Release

should be read narrowly so they do not apply to the claims at issue here.  (*See*

*generally* Pl. Opp.).  In the remainder of this Opinion, the Court concludes that,

although Plaintiff may not collaterally attack the validity of the Third-Party

Release, the Release does not preclude Plaintiff's claims for two reasons:  (i) on

the record before it, the Court cannot determine whether Plaintiff received

---

[5]     The Plan states that "[e]xcept to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York."  (Bankr. Dkt. #142, 158).  Further, both parties have relied upon New York law in their briefing.  *See Celle* v. *Filipino Reporter Enters. Inc.*, 209 F.3d 163, 175 (2d Cir. 2000) ("Since no party has challenged the choice of New York [] law, all are deemed to have consented to its application." (citations omitted)).  Therefore, the Court applies New York substantive law in adjudicating this motion.

notice of the bankruptcy proceedings sufficient to bind him to the Third-Party Release; and (ii) the issue of whether the Third-Party Release would apply to Plaintiff's FLSA and NYLL claims is a question of fact that cannot be decided at this stage in the proceedings.

### 1. Plaintiff May Not Collaterally Attack the Third-Party Release

The Second Circuit has held that "[i]n bankruptcy cases, a court may enjoin a creditor from suing a [non-debtor] third party, provided the injunction plays an important part in the debtor's reorganization plan." *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 141 (2d Cir. 2005) (quoting *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 293 (2d Cir. 1992)). Such third-party releases are appropriate only in "rare cases," and are not tolerated "absent the finding of circumstances that may be characterized as unique." *Id.* at 141-42. Courts have approved third-party releases when:

> the estate received substantial consideration, the enjoined claims were channeled to a settlement fund rather than extinguished, the enjoined claims would indirectly impact the debtor's reorganization by way of indemnity or contribution; and the plan otherwise provided for the full payment of the enjoined claims. Releases of claims against [third parties] may also be tolerated if the affected creditors consent.

*Id.* at 142 (internal citations and quotation marks omitted). Where bankruptcy courts enter orders that release third parties from liability, aggrieved parties may appeal those orders and challenge the propriety of the releases. *See, e.g.*, *In re Kirwan Offices S.a.r.l.*, 592 B.R. 489 (S.D.N.Y. 2018) (denying an appeal challenging the validity of a third-party release adopted by the bankruptcy court).

Certain of Plaintiff's arguments against the preclusive effect of the Third-Party Release challenge the Bankruptcy Court's authority to order the Release. (*See* Pl. Opp. 9-13, 15-16 (citing *In re XO Commc'n, Inc.*, 330 B.R. 394, 432-33 (Bankr. S.D.N.Y. 2005), for the proposition that third-party releases in bankruptcy plans are proper only in rare circumstances)). For example, Plaintiff argues that FLSA claims, like the ones he asserts here, cannot be settled absent judicial approval of the settlement. (Pl. Opp. 9-13 (citing *Cheeks* v. *Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) (holding that FLSA rights cannot be waived absent approval of the district court or the Department of Labor); *Redzepagic* v. *Hammer*, No. 14 Civ. 9808 (ER), 2017 WL 780809, at *3-4 (S.D.N.Y. Feb. 27, 2017) (finding that purported waiver of FLSA rights in an agreement was not enforceable because the fairness of the agreement had not been approved))). Because the bankruptcy record does not indicate that the Bankruptcy Court reviewed any possible waiver of FLSA claims for fairness — or that it even contemplated that the release would waive FLSA claims — Plaintiff argues that the Third-Party Release cannot be enforceable against his FLSA claims. [6]

---

[6]     Plaintiff frames this argument as suggesting that the Bankruptcy Court did not intend for the Third-Party Release to apply to FLSA claims: "The likelihood that the Bankruptcy Court contemplated the release of wage claims against non-debtors is particularly remote given the lack of any proceedings involving wage claims, and the bedrock precept that compromises of FLSA claims require judicial scrutiny regarding their fairness and 'approval of the district court or the DOL.'" (Pl. Opp. 9-10 (internal citations omitted)). This argument appears to challenge both the scope and the validity of the Third-Party Release, and thus is addressed again later in this Opinion in the Court's analysis of the scope of the Release.

To the extent Plaintiff challenges the validity of the Third-Party Release or the Bankruptcy Court's power to impose it, such an argument may not be considered by this Court because the time to challenge the Bankruptcy Court's order has expired. *See* Fed. R. Bankr. P. 8002(a) (providing that bankruptcy appeals shall be noticed within fourteen days of the entry of the judgment or order being appealed). This constraint upon a district court's reviewing powers was recognized by the Supreme Court in *Travelers Indemnity Co.* v. *Bailey*, 557 U.S. 137 (2009). There, the Supreme Court reviewed a 2008 decision by the Second Circuit holding, in relevant part, that a third-party release entered by a bankruptcy court in 1986 was unenforceable and overbroad because the bankruptcy court lacked subject matter to enter the release at that time. *Id.* at 144-47. The Supreme Court reversed, holding that the 1986 bankruptcy order had become "final on direct review over two decades ago" and the issue of "whether the Bankruptcy Court had jurisdiction and authority to enter [the order] in 1986 was not properly before the Court of Appeals in 2008." *Id.* at 148. Once the 1986 order became final on direct review, it became "*res judicata*," and could not be attacked collaterally. *Id.* at 152-53.

Under *Travelers Indemnity*, Plaintiff may not now challenge whether the Third-Party Release is valid or enforceable. Plaintiff argues that the fairness review prescribed by *Cheeks* is mandatory, and that his FLSA claims could not have been settled by the Third-Party Release in the absence of any such review. (Pl. Opp. 9-11). But there can be no doubt that subject matter jurisdiction is a prerequisite to the entry of a judgment, and the Supreme Court has held that

12

lack of subject matter jurisdiction is not a ground upon which a bankruptcy court order can be collaterally attacked. The same must be true of a collateral attack on the Third-Party Release based on its failure to comply with *Cheeks.* The time for direct review of the Bankruptcy Court's order has passed, and such a collateral attack would not comport with principles of *res judicata.*

### 2. The Record Does Not Establish That Plaintiff Received Constitutionally Sufficient Notice of the Bankruptcy Proceeding

The validity of the Third-Party Release is not the end of the analysis, however; there remains the question of enforceability. Plaintiff would not be bound by the Third-Party Release if he did not receive constitutionally sufficient notice of the bankruptcy proceeding. *Compare In re Johns-Manville Corp.*, 600 F.3d 135, 158 (2d Cir. 2010) (holding that a plaintiff was not bound by the terms of a bankruptcy court order when he did not receive adequate notice), *with MacArthur Co.* v. *Johns-Manville Corp.*, 837 F.2d 89, 94 (2d Cir. 1988) (holding that a plaintiff was bound by a settlement approved by a bankruptcy court where "notice of proposed settlements issued by the Bankruptcy Court met the requirements of due process").[7]

---

[7]     Defendants concede that Plaintiff would not be bound by the Third-Party Release if he did not receive notice of the bankruptcy proceeding. (*See* Def. Br. 4 ("The only possible defenses would be either that the Plaintiff did not receive notice of the Chapter 11 case....")). In so doing, Defendants have waived any argument that the Bankruptcy Court was employing *in rem* jurisdiction. Where jurisdiction is *in rem* in nature, it "permits a determination of all claims that 'anyone, whether named in the action or not, has to the property or thing in question,'" and the requirements of notice and due process at issue here would not apply. *In re Johns-Manville Corp.*, 600 F.3d 135, 152 (2d Cir. 2010) (quoting *In re Millenium Seacarriers, Inc.*, 419 F.3d 83, 92 (2d Cir. 2005)).

Though Defendants did not present an *in rem* argument, for the sake of completeness, the Court notes that the Bankruptcy Court's entry of the Third-Party Release would have an *in personam*, not *in rem*, effect in this action:

The notice requirements of bankruptcy law are "founded in fundamental notions of procedural due process." *In re Grumman Olson Indus., Inc.*, 467 B.R. 694, 706-07 (S.D.N.Y. 2012) (quoting *In re Savage Indus., Inc.*, 43 F.3d 714, 721 (1st Cir. 1994); *see also Armstrong* v. *Manzo*, 380 U.S. 545, 550 (1965) (holding that failure to give proper notice violates "the rudimentary demands of due process of law"); *City of N.Y.* v. *N.Y., N.H. & H.R. Co.*, 344 U.S. 293, 297 (1953) (stating in the bankruptcy context that "[t]he statutory command for notice embodies a basic principle of justice — that a reasonable opportunity to be heard must precede judicial denial of a party's claimed rights"). "At its core, the concern is whether a claimant can be 'force[d] ... to be bound by proceedings in which he did not and could not participate.'" *Grumman Olson Indus.*, 467 B.R. at 705 (quoting *In re Kewanee Boiler Corp.*, 198 B.R. 519, 528-29 (Bankr. N.D. Ill. 1996)). It is well settled that in order for any proceeding to satisfy due process, there must be "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); s*ee also* 11 U.S.C.

---

When a court exercises *in personam* authority, it addresses a claim for liability, such as one involving a claim for money damages, against a particular party. In contrast, the bankruptcy court's *in rem* authority is, for the most part, limited to the resolution of claims against the property in the bankruptcy estate.

*In re Johns-Manville Corp.*, 600 F.3d at 153 n.13. The Third-Party Release purports to apply to all claims against 919 LLC and its agents, not just their property. Further, Plaintiff's claims against Defendants seek money damages for employment law violations. Thus, the Third-Party Release was ordered pursuant to the Bankruptcy Court's *in personam* jurisdiction, and due process requirements must be satisfied for it to be effective as to Plaintiff. *See id.*

§ 102(1) (defining "after notice and a hearing" as "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances"); *Savage Indus.*, 43 F.3d at 720 ("Under the Code ... the debtor in possession or trustee must ensure 'parties in interest' adequate notice and opportunity to be heard before their interests may be adversely affected.").

Defendants assure the Court that Plaintiff received sufficient notice of the bankruptcy proceeding and the Third-Party Release, stating: "The Plaintiff not only had knowledge of the case, he actively participated in it." (Def. Br. 4). To evaluate this argument, the Court can consider any information cited to it that is present in the Amended Complaint, documents attached to the Amended Complaint, or materials of which the Court can take judicial notice, such as the Bankruptcy Court docket. *TechnoMarine SA*, 758 F.3d at 498 ("A court may consider a *res judicata* defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice."). As discussed below, Defendants' bald assertion that Plaintiff received constitutionally sufficient notice is inadequately supported by those documents the Court may consider.

*First*, Defendants claim that the exhibits to the Amended Complaint demonstrate that Plaintiff was actively involved in the 919 LLC's bankruptcy proceeding. (Def. Br. 4). But after careful review of each of the four exhibits to the Amended Complaint, the Court fails to see how they have any relevance to

the bankruptcy proceeding. None of the documents makes any reference to 919 LLC's bankruptcy or reorganization, let alone suggests that Plaintiff was aware of the bankruptcy proceeding before the Bankruptcy Court order entering the Third-Party Release became final.

*Second*, Defendants claim that the date on which the Complaint was filed suggests that Plaintiff knew about the bankruptcy proceeding. (Def. Br. 4). Defendants claim that the Complaint was filed on the 30th day after the Plan's Effective Date, the date by which such a claim would have to have been filed according to the relevant statute of limitations. (*Id.* (citing 11 U.S.C. § 108(c)). But the accuracy of this timeline is belied by the Bankruptcy Court docket. Defendants state, and the record reflects, that the Effective Date was April 2, 2019. (Def. Br. 2; Bankr. Dkt. #180). The Complaint in this action was filed on March 29, 2019, four days *before* the Effective Date, not 30 days *after*. (Dkt. #1). Thus, Defendants' arguments concerning the significance of the filing date are unfounded. Even if the Complaint had been filed on the 30th day after the Effective Date, that fact alone would not establish that Plaintiff had notice of the bankruptcy proceeding. Such circumstantial evidence could plausibly be chalked up to happenstance, and would not present a valid basis for disposal of the case at this early stage in the litigation.

*Third* and finally, Defendants claim that Plaintiff had "both written and oral notice of the Chapter 11 proceeding," because "Plaintiff was present in court for at least two hearings." (Def. Br. 8). But Defendants do not cite to any docket entry in the Bankruptcy Court proceeding, or any other document that

16

can properly be considered on a motion to dismiss, to support their allegation. The paucity of Defendants' briefing on this point would be reason enough to reject the argument. But in the interest of ascertaining the truth regarding whether Plaintiff had notice of the bankruptcy proceeding, the Court undertook its own, albeit partial, review of the 229 entries of the Bankruptcy Court docket.

To begin, the Court examined each of the publicly available transcripts to see if they suggested that Plaintiff attended a hearing. *See Pani*, 152 F.3d at 75 ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)."). None of these documents reference Plaintiff or Plaintiff's counsel, nor do they suggest that either attended any hearings. Next, the Court reviewed each of the affidavits of service filed in the Bankruptcy Court. None of the affidavits filed before the entry of the Third-Party Release, or on the date on which it became final for purposes of appellate review, indicated that Plaintiff had been served with notice of the bankruptcy proceeding.[8]

On the record before it, the Court cannot find that Plaintiff received constitutionally sufficient notice of the bankruptcy proceeding or the Third-

---

[8]     The only affidavit of service that lists Plaintiff appears at docket entry 189, and states that Plaintiff received notice that all claims for administrative expenses that accrued between December 22, 2016, up to April 18, 2019, had to be filed on or before May 30, 2019. (Bankr. Dkt. #187, 189). But Plaintiff received this service on May 6, 2019, after this action had already been filed and after the Plan had become a final, unappealable order. Further, Plaintiff's claims involve alleged wrongdoing that transpired before December 22, 2016. Thus, this affidavit of service cannot suffice to have put Plaintiff on notice regarding the bankruptcy proceeding at a time when he could still challenge the Third-Party Release.

Party Release.  Absent notice, Plaintiff is not bound by the terms of the Third-Party Release.  *See Johns-Manville Corp.*, 600 F.3d at 158.  For this reason, Defendants' argument that Plaintiff's claims are precluded by the Third-Party Release must fail at this stage in this proceeding.[9]

### 3. Additional Discovery Is Required to Determine If the Third-Party Release Encompasses Plaintiff's Claims

Plaintiff advances an additional argument as to why the Court should not find his claims to be precluded by the Third-Party Release:  Even if the Third-Party Release were binding upon Plaintiff, it does not unambiguously include his claims within its scope.  (Pl. Opp. 15-18).  Plaintiff urges that discovery is necessary to determine the breadth of the Third-Party Release, so it is inappropriate to dispose of the case at the motion-to-dismiss stage.  For the reasons stated below, the Court agrees.

On its face, the language of the Third-Party Release is extremely broad: it purports to release 919 LLC, its agents, professionals, and employees from "all claims … of any nature whatsoever" existing as of October 3, 2018. (Bankr. Dkt. #142 at § 6.5).  Given their literal effect, these words would seem to insulate Defendants from any claim that Plaintiff might bring against them for matters that existed before October 3, 2018.  But "[w]hile it has been held that an unreformed general release will be given its full literal effect where it is directly or circumstantially evident that the purpose is to achieve a truly general settlement, the cases are many in which the release has been avoided

---

[9]     The Court recognizes, of course, that discovery may reveal that Plaintiff did have constitutionally sufficient notice of the Bankruptcy Court proceedings.

with respect to uncontemplated transactions despite the generality of the language in the release form." *In re Actrade Fin. Techs., Ltd.*, 424 B.R. 59, 69 (Bankr. S.D.N.Y. 2009) (quoting *Mangini* v. *McClurg*, 24 N.Y.2d 556, 562 (1969)).

A general release is "governed by principles of contract law," but the New York Court of Appeals has held that interpretation of a general release is also subject to "special rules," based on the "recognition that releases contain standardized, even ritualistic, language and are given in circumstances where the parties are sometimes looking no further than the precise matter in dispute that is being settled." *Mangini*, 24 N.Y.2d at 562. Thus, courts applying New York law have looked beyond the language of a general release and to the context in which it was entered into in determining the scope of that release. *See Vornado Realty Trust* v. *Castleton Env't. Contractors, LLC*, No. 08 Civ. 4823 (DLI), 2011 WL 4592800, at *4 (E.D.N.Y. Sept. 30, 2011) ("It is well recognized in New York that where 'form' releases are used, the 'standardized, even ritualistic, language' of the 'form' will give way to the parties' actual intent, thus, subordinating the boilerplate terms of the standardized contract." (quoting *Interpool Ltd.* v. *Patterson*, No. 89 Civ. 8501 (SWK), 1993 WL 410465, at *11 (S.D.N.Y. Oct. 8, 1993))); *see also Lucent Tech., Inc.* v. *Gateway, Inc.*, 470 F. Supp. 2d 1195, 1200-02 (S.D. Cal. 2007) ("New York law considers the context as a key factor in interpreting a release. Where the release presents a specific context, the released claims are interpreted in this light."); *In re Corp.*

*Res. Servs., Inc.*, No. 15-12329 (MG), 2019 WL 5095709, at *6 (Bankr. S.D.N.Y. Oct. 10, 2019) (same).

Thus, in determining the meaning of the Third-Party Release under New York law, the Court must consider not only its generalized language, but also the context in which it appears and was ordered by the Bankruptcy Court. If, upon examination of both, the Court finds that the Third-Party Release is unambiguous and has a "definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion," *Sayers* v. *Rochester Telephone Corp. Supplemental Management Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993), the Court may construe its meaning as a matter of law. If, however, the Third-Party Release is ambiguous — that is, subject to more than one reasonable meaning and requiring resort to extrinsic evidence — the meaning of the Third-Party Release must be determined by a trier of fact. *See 3Com Corp.* v. *Banco do Brasil, S.A.*, 171 F.3d 739, 746-47 (2d Cir. 1999).

The text of the Third-Party Release standing alone suggests that Plaintiff's claims are included within its scope. But certain features of the Plan in which the Release appeared — as well as the bankruptcy proceeding as a whole — prevent the Court from concluding at this stage that the Release unambiguously encompasses Plaintiff's claims. Most crucially, Defendants have offered no indication that any party to the bankruptcy proceeding believed that Plaintiff might have employment-related claims to bring against 919 LLC, its agents, professionals, or employees when the Third-Party Release was

agreed to. Nor has the Court uncovered any such indication in its review of the Bankruptcy Court docket. Instead, the docket suggests that neither the Bankruptcy Court, nor 919 LLC, nor any Defendant suspected that Plaintiff had a potential claim. If they had contemplated Plaintiff's claims when the Third-Party Release was being considered, they would presumably have served Plaintiff with notice of the bankruptcy proceeding to ensure that Plaintiff would have the opportunity to settle his claim or, at the very least, to make sure that Plaintiff's claims would be precluded going forward. The docket does not suggest that notice was given. On the record before it, the Court cannot find that Plaintiff's claims were contemplated by any of the parties to the Third-Party Release when the Plan was ordered by the Bankruptcy Court, making it less likely that such claims would be covered by the Third-Party Release. *See Actrade Fin. Tech.*, 424 B.R. at 72 ("It is [] a firm principle of New York law that it is less likely that claims are covered by a general release if they are unknown at the time of the release.").

The Court is left with conflicting evidence regarding the scope of the Third-Party Release: the terms of the provision imply that Plaintiff's claims would be included within the scope of the Release, while the context in which the Release was entered suggests that the claims were not released. In light of this conflict, the Court cannot determine that the Third-Party Release unambiguously includes Plaintiff's claims within its scope.[10] This ambiguity

---

[10]     Plaintiff's argument that the Third-Party Release does not unambiguously include his claims within its scope cites to *Hernandez* v. *Larry Miller Roofing, Inc.*, 628 F. App'x 281 (5th Cir. 2016) (unpublished decision). There, the Fifth Circuit Court of Appeals found

may only be resolved after further development of the factual record. For this reason as well, Defendants' motion to dismiss must be denied.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is DENIED. The Clerk of Court is directed to terminate the motion at docket entry 15. On or before **February 14, 2020**, Defendants shall file a responsive pleading. On or before **February 24, 2020**, the parties shall advise the Court whether they intend to participate in the Court's mediation program. If they do not wish to participate in mediation, the parties shall submit a proposed Case Management Plan, as well as the joint status letter contemplated by the Plan, on that same date.

SO ORDERED.

Dated:     January 28, 2020
           New York, New York

                                         _____
                                         KATHERINE POLK FAILLA
                                         United States District Judge

---

that a general third-party release contained in a bankruptcy reorganization plan would not preclude FLSA claims brought by the plaintiff against a third party, because the language of the release was not specific enough to preclude those claims. *Id.* at 286-88. In reaching this decision, the Fifth Circuit relied upon its prior holdings that releases against non-debtors must be specific. *Id.* The Court finds this case analogous, but does not rely upon it, because neither the Second Circuit nor New York courts have required specificity in third-party releases when determining their scope. Instead, the Court finds instructive New York case law encouraging the examination of the context in which a release was entered when determining the scope of the release. *See In re Actrade Fin. Techs., Ltd.*, 424 B.R. 59, 69 (Bankr. S.D.N.Y. 2009) (summarizing case law)).