Rapaport Law Firm, PLLC | Attorneys at Law | One Penn Plaza | Suite 2430 | New York, NY 10119 | Tel 212.382.1600 | Fax 212.382.0920 | www.rapaportlaw.com

**Rapaport Law Firm**

Marc A. Rapaport*
Tel (212) 382-1600
Fax (212) 382-0920
mrapaport@rapaportlaw.com

*Member NY & NJ Bars

October 2, 2020

Honorable Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007

    Re:    **Campos v. Aegis Realty Management Corp. and Seth Miller**
              **19-CV-02856 (KPF) (BSM)**

Dear Judge Failla:

      This firm is co-counsel for Plaintiff, Silfredo Campos ("Plaintiff") in the above-referenced matter, which involves claims for wage and hour violations. Plaintiff writes jointly with Defendants to request that the Court approve the settlement agreement (the "Agreement") reached by the parties herein as a fair and reasonable resolution of this matter, negotiated at arm's length between experienced counsel. The Agreement is submitted simultaneously with this letter as Exhibit 1 hereto. Plaintiff's counsel further requests that the Court approve our firms' requested attorneys' fees and costs.

      The Agreement reflects a desire by the parties to fully and finally settle Plaintiff's Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") claims. In addition, the Agreement resolves all issues and claims relating to Plaintiff's residence in an apartment at Defendants' building, 860 East 163rd Street, Bronx, New York (the "Building"). In this regard, the Agreement provides that all of the parties mutually release each other from all claims relating to Plaintiff's residence at (and subsequent departure from) the Building.

    **I.**    **Introduction.**

      As Plaintiff's claims arise, in part, under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), the Agreement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). In evaluating whether a proposed settlement is fair and reasonable, "a court should consider the totality of circumstances including, but not limited to, the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the produce of arm's-length bargaining

Honorable Katherine Polk Failla
October 2, 2020

between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-336, (S.D.N.Y. 2012) (citations and quotation marks omitted).

### II. Summary of Plaintiff's Factual Allegations and Damage Calculations, and Defendants' Position

**(1) Plaintiff's Allegations:**

Plaintiff alleges that he worked for Defendants as a superintendent at the Building from early February 2016 through December 21, 2016. Plaintiff alleges that his duties went far beyond the cleaning and light repair work that is typically performed by superintendents. Plaintiff performed extensive renovation work in the Building, including, for example, gut renovations of apartments. These labor-intensive work projects were among the factors that resulted in Plaintiff working extensive amounts of overtime.

There are no records to establish the number of hours that Plaintiff worked during any particular period of time. Because Defendants failed to accurately keep track of Plaintiff's work hours, Plaintiff's recollection of the hours that he worked is presumed to be correct. *E.g.*, *Gunawan v. Sake Sushi Rest*, 897 F. Supp. 2d 76, 88-89 (E.D.N.Y. 2012) (quoting *Zeng Liu v. Jen Chu Fashion Corp.*, 2004 U.S. Dist. LEXIS 35 (S.D.N.Y. Jan. 7, 2004)). However, if this matter proceeded to trial, Plaintiff would face the challenge of recalling and testifying to hours that he worked without the benefit of any written proof.

Plaintiff alleges that he worked substantially more than forty (40) hours per week without receiving any compensation for his overtime hours. Instead, he received fixed weekly paychecks that were intended to cover only the first forty (40) hours of work per week. For purposes of estimating his damages, Plaintiff divides his employment with Defendants into three time periods, as follows:

**(a) Early February 2016 through May 20, 2016 (14 weeks):**

Plaintiff alleges that during this period, he worked an average of 67 hours per week for a flat weekly payment of $500.00. Based on the foregoing, Plaintiff asserts that he is owed approximately $7,087.50 for this period. This is based on an effective, regular hourly rate of pay of $12.50 ($500 ÷ 40), and an overtime rate of $18.75 per hour ($12.50 x 1.5), to wit: $18.75 x 27 hours x 14 weeks.

**(b) May 20, 2016 through July 22, 2016 (9 weeks):**

Plaintiff alleges that during this period, he worked an average of 70 hours per week for a flat weekly payment of $500.00. Based on the foregoing, Plaintiff asserts that he is owed unpaid overtime of approximately $5,062.50 for this period. This is based on an effective, regular hourly rate of pay of $12.50 ($500 ÷ 40), and an overtime rate of $18.75 per hour ($12.50 x 1.5), to wit: $18.75 x 30 hours x 9 weeks.

Honorable Katherine Polk Failla
October 2, 2020

**(c) July 23, 2016 through December 21, 2016 (21 weeks):**

Plaintiff alleges that during this period, he worked an average of 73 hours per week for a flat weekly payment of $500.00. Based on the foregoing, Plaintiff asserts that his total overtime damages for this period are approximately $12,993.75. The foregoing is based on an effective, regular hourly rate of pay of $12.50 ($500 ÷ 40), and an overtime rate of $18.75 per hour ($12.50 x 1.5), to wit: $18.75 x 33 hours x 21 weeks.

**(d) Plaintiff's Claims for Wage Notice and Statement Violations:**

Plaintiff also alleges that he is entitled to statutory damages for his wage notice and wage statement claims under the NYLL. Plaintiff was not provided with a wage notice upon his hiring, or at any time thereafter. Plaintiff therefore asserts that he is entitled to statutory damages under NYLL § 198(1-b) (Effective 2/27/15), in the sum of $50.00 per workday, up to $5,000.00. Based on Plaintiff's period of employment (approximately 225 workdays), Plaintiff contends that he is entitled to damages for wage notice violations in the amount of the statutory cap, $5,000.

Plaintiff also alleges that he is entitled to damages for Defendants' failure to provide accurate wage statements with each paycheck as required by NYLL § 195(3), which provides for damages of $250.00 per workday, up to $5000.00. Based on the number of workdays, Plaintiff is entitled to $5,000.00.

**(2)  Defendants' Contentions:**

Defendants assert that Plaintiff is not entitled to any overtime pursuant to the New York Labor Law as janitors in residential buildings, who are provided residential housing, are exempt from overtime. 12 N.Y.C.C.R. § 141-1.4. As Plaintiff was the sole janitor in charge of the care and maintenance of the Building, where he live, he was exempt from overtime pursuant to the New York Labor Law. 12 N.Y.C.C.R. § 141-3.4. Defendants also assert that at best, Plaintiff would be entitled to overtime pursuant to the FLSA at the much lower overtime rate prescribed by the FLSA. Further, pursuant to the FLSA, Defendants assert that they would be able to take a credit for the reasonable value and fair cost for the lodging provided to Plaintiff.

Defendants contend that Plaintiff did not begin working at the building until early June 2016, and provided plaintiff with documentary evidence supporting same. This would eliminate Plaintiff's overtime claims for approximately five of the eleven months which Plaintiff claims, *i.e.*, approximately $8,500.00. Defendants dispute that Plaintiff was not properly paid overtime, and that the job duties Plaintiff was assigned would require substantially fewer hours than the number of hours claimed by Plaintiff. Defendants also contend that Plaintiff cannot support his claim with any documentary records reflecting any of the overtime hours that have been allegedly worked. Further, Defendants assert that to the extent there were any wage violations, such violations would not warrant liquidated damages because Defendants believed in good faith that they complied with the law, particularly in light of Plaintiff's status as a residential "janitor" (under the NYLL) in the Building.

Honorable Katherine Polk Failla
October 2, 2020

Defendants further assert that all of Plaintiff's claims are barred by the third party release contained in an order entered by the Bankruptcy Court in the bankruptcy proceeding of non-party 919 Prospect Avenue LLC ("919 LLC"). In this Court's Opinion and Order of January 28, 2020 (Dkt. 26), the Court left open the possibility that Plaintiff's claims were so barred, but held that resolution of this issue requires further development of a factual record.

### III.    The Agreement is Fair and Reasonable.

The parties represent to the Court that the settlement between the parties is a fair and reasonable resolution of a *bona fide* dispute reached by experienced counsel. As reflected in the attached Agreement, the parties have agreed to settle the case for the sum of $20,000.00, to be delivered within twenty days of the Court's approval of this Agreement. After attorneys' fees and costs, Plaintiff receives $11,000.00.

We believe that the Settlement Amount is fair and reasonable in light of the risk associated with the third-party release contained in the Bankruptcy Court's Order. In addition, Plaintiff faces uncertainties relating to establishing the precise amount of overtime hours. *See Beckert v. Rubinov*, 15 Civ. 1951 (PAE), 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015)(finding that the "amount [plaintiff] would receive under the Agreement ($29,557.97) is a substantial proportion of the maximum possible recovery he identifies ($114,700)"). Here, Plaintiff concluded that he would face exceedingly difficult challenges recalling and establishing the number of hours that he worked during his employment. Defendants have provided discovery which, according to Defendants, shows that Plaintiff did not begin working at the Building until early June 2016. Although Plaintiff contends that he began working for Defendants in February 2016, this factual dispute creates a risk that Plaintiff may not obtain the full amount of damages that he demands.

The parties were able to reach an agreement before incurring the costs of depositions, motion practice and trial. *See Burgos v. San Miguel Transp., Inc.*, 2016 U.S. Dist. LEXIS 166248, *6, 2016 WL 7015760 (S.D.N.Y. Dec. 1, 2016)(citing the relatively early stage of the case as one of the factors supporting the fairness of a settlement that was substantially below the amount that plaintiff initially contemplated). Furthermore, here, as in *Burgos*, there is no assurance that Plaintiff could be awarded liquidated damages under FLSA or NYLL if this matter were to proceed to trial, particularly in light of New York's Janitor Exemption.

Finally, the Agreement ensures that all parties have closure with respect to issues concerning Plaintiff's residence at the Building. The desire to resolve all such issues is one of the reasons for the Agreement's broad mutual releases.

### IV.    Plaintiff's Counsel's Application for Attorneys' Fees.

Under both the FLSA and NYLL, Plaintiff is entitled to recover attorneys' fees and costs. Attorneys' fees in FLSA settlements are examined to ensure that the interests of plaintiff's counsel in his or her own compensation did not have an adverse impact on the extent of relief counsel obtained for the client. *See Wolinsky v. Scholastic*, 900 F.Supp.2d 332, 336 (S.D.N.Y. 2012). Here, the two law firms that represented Plaintiff in this matter are both requesting

4

Honorable Katherine Polk Failla
October 2, 2020

substantially reduced fees in an effort to facilitate settlement and maximize the amount that Plaintiff will receive.

As stated above, under the Agreement, Plaintiff receives Eleven Thousand Dollars ($11,000).

Rapaport Law Firm, PLLC ("RLF") requests that the Court approve payment to RLF of Six Thousand Two Hundred Dollars ($6,200.00). The foregoing sum is apportioned as follows: Two Thousand Six Hundred Eighty Seven Dollars ($2,687.00) for costs/disbursements and Three Thousand Five Hundred Thirteen Dollars ($3,513.00) for attorney's fees. The amount of the foregoing legal fees is just a fraction of the total amount of attorney time and disbursements reflected on RLF's history bill, which is attached hereto as Exhibit 2. The requested amount of legal fees is also less than the 1/3 contingency provided for in RLF's retainer agreement with Plaintiff, which is attached hereto as Exhibit 3.

Because of the bankruptcy issues raised by Defendants, RLF retained the law firm of LeClairRyan PLLC ("LeClairRyan") to provide bankruptcy advice in this matter. This was done with the written approval of Plaintiff. Ganice Grubin, Esq. of LeClairRyan has decades of bankruptcy experience. A copy of Ms. Grubin's curriculum vitae is attached hereto as Exhibit 4. A copy of LeClairRyan's retainer agreement with RLF is attached hereto as Exhibit 5. Under this retainer agreement, RLF remitted an initial retainer payment of $2,000.00. LeClairRyan agreed to reduce their attorneys' standard hourly billing rates, and to defer payment of the balance (i.e., amounts payable after the exhaustion of the initial $2,000 retainer) until the conclusion of this matter. Ms. Grubin was the LeClairRyan attorney primarily involved in this case. As shown by LeClairRyan's attached invoices (Exhibit 6), LeClairRyan's billing records show that there is a total balance due of $6,607.00, which LeClairRyan has agreed to reduce to $2,800.00. LeClairRyan's billing arrangements (including its reduced hourly rates and agreement to substantially reduce its fees) are beneficial to Plaintiff. This is particularly true because the LeClairRyan's involvement was instrumental in defeating Defendants' motion to dismiss the Amended Complaint.

The attorneys and staff at Rapaport Law Firm who were involved in this case, and whose time is reflected in the attached billing records, are:

1. **Marc Rapaport**

   I am the managing member of Rapaport Law Firm, which began as my solo practice in 1995. I have more than twenty years of experience litigating employment matters on behalf of employees in New York. I received a J.D. from Georgetown University Law Center in 1992. Thereafter, I worked as a Staff Attorney for the United States Department of Justice in Washington, D.C. I represent employees in a broad range of discrimination and wage/hour matters. I am an active member of the National Employment Lawyers Association New York. I believe that my clients also benefit from my broader experience beyond the field of employment law, including my experience litigating commercial disputes in state and federal courts.

5

Honorable Katherine Polk Failla
October 2, 2020

    For more than 23 years, I have endeavored to represent immigrant workers who often find it difficult to obtain skilled legal representation. In recent years, I have particularly focused on representing immigrant workers (superintendents and porters) in the building service industry, which have included, by way of example, the following matters: <u>Armas et al. v. SKYC Management LLC et al.</u>, SDNY 2014 CV 6360 (PGG)(HBP); <u>Castillo et al. v.140 Ash Associates, LLC, et al.</u>, EDNY 16-cv-5216 (FB)(PK); and <u>Salas et al. v. Phoenix ACV Construction Services, LLC et al.</u>, SDNY 16-cv-08066 (LAP). My requested hourly rate of $400.00 has been approved by multiple judges in the Second Circuit. *See, Montalvo v. Arkar Inc.*, 2018 U.S. Dist. LEXIS 79667 at *5 (S.D.N.Y. May 10, 2018).

**2. <u>Karina Gulfo</u>**

    Ms. Gulfo has been a paralegal at Rapaport Law Firm since August 2018. Ms. Gulfo speaks fluent Spanish. Because of her language skills, Ms. Gulfo served a crucial and effective role in our firm's representation of Plaintiff. Ms. Gulfo has performed FLSA damage calculations in multiple FLSA/NYLL cases since she joined Rapaport Law Firm.

    We respectfully request that the Court approve the Agreement, as well as the amount of legal fees requested herein. Should Your Honor have any questions or concerns regarding this settlement, the parties are happy to discuss them. The parties thank the Court for its attention to this matter.

                                 Respectfully yours,

                                         /s/

                                 Marc A. Rapaport

Encs. (Exhibits 1 – 6)

cc:    All Counsel of Record (*Via ECF only*)